**TARTER KRINSKY & DROGIN LLP**
*Proposed Attorneys for Whitehorse 401 LLC*
*Debtor and Debtor-in-Possession*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
smarkowitz@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

In re:

WHITEHORSE 401 LLC[1]

      Debtor.

---------------------------------------------------------------x

Chapter 11

Case No. 25-40925

**DECLARATION OF DAVID GOLDWASSER PURSUANT TO LOCAL BANKRUPTCY RULE 1007-4 OF THE LOCAL BANKRUPTCY RULES FOR THE UNITED STATES BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF NEW YORK**

  I, David Goldwasser, declare, pursuant to section 1746 of title 28 of the United States Code, that:

  1. I am the vice president of restructuring of Whitehorse 401 LLC ("<u>Whitehorse</u>" or the "<u>Debtor</u>") a limited liability company organized under the laws of the State of Delaware. Whitehorse intends to file a voluntary chapter 11 petition with the Clerk of this Court on or about February 25, 2025 (the "<u>Petition Date</u>"). I am duly authorized to make this declaration (the "<u>Declaration</u>") on behalf of the Debtor.

  2. I have been retained to oversee and manage the Debtor's restructuring efforts during the Chapter 11 process due to my extensive experience navigating bankruptcy proceedings and restructuring complex real estate and operational issues. The Debtor does not possess this expertise internally and sought my appointment to assist in preserving the

---

[1] The Debtor's last four digits from the tax identification number are 81-3771799. The Debtor's principal of business is 1274 49th Street, Brooklyn, NY 11219.

1

company's assets, restructuring its operations, and guiding it through the complexities of Chapter 11.

3. The purpose of this Chapter 11 case is to retain and restructure the Debtor's property holdings and business operations while addressing critical financial and operational challenges. The Debtor is currently burdened by unfavorable lease obligations, devalued assets, and other financial constraints that threaten its viability. As part of the restructuring, the Debtor will pursue lease rejections, renegotiations, and potential new lease agreements to realign its obligations with market conditions. Additionally, the company will take necessary steps to preserve and maximize the value of its assets, stabilize cash flow, and position itself for long-term financial sustainability.

4. Due to the complexity of bankruptcy proceedings, including lease rejections, valuation disputes, creditor negotiations, and operational restructuring, the Debtor required an experienced professional to navigate these issues effectively. My role as Vice President of Restructuring is to lead these efforts, coordinate with legal and financial advisors, and implement strategies that protect the company's assets while working towards a successful reorganization.

5. My engagement complies with the Jay Alix Protocols, ensuring transparency and accountability in the retention of restructuring professionals. The terms of my engagement have been fully disclosed in accordance with these protocols and applicable bankruptcy laws.

6. I am familiar with the Debtor's day to day operations, business, and financial affairs, and books and records. I am above eighteen years of age, and I am competent to testify.

7. My engagement was deemed necessary to provide experienced leadership in restructuring the Debtor's business and ensuring compliance with the obligations and requirements of the Chapter 11 case. I submit this Declaration in accordance with Local Bankruptcy Rule 1007-4 (the "<u>Local Bankruptcy Rules</u>") to support the Debtor's Chapter 11 filing.

8.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge and my discussions with other members of the Debtor's management team. If called as a witness, I could and would testify competently to the facts set forth in this Declaration.

9.      Parts I through III of this Declaration provide an overview of the Debtor's business, events giving rise to the commencement of this chapter 11 case and the Debtor's capital structure. Part IV sets forth the information required by Local Bankruptcy Rules.

**I.    THE DEBTOR'S BUSINESS**

10.     The Debtor's sole asset is an approximate 208,000 sq. ft. office building located at 401 Whitehorse Road, Voorhees Township, Camden County, NJ (the "Property"). The Property was constructed in 1971 and renovated in 2000. The Property is situated on an approximate 26 acre site.

11.     The Debtor acquired the Property in or about January 2017 pursuant to a purchase and sale agreement dated August 30, 2016 between the Debtor, as purchaser and LSREF2 OREO (Direct), LLC, as seller. In order to fund the purchase, the Debtor borrowed $12,950,000 from LSTAR Capital Finance II, Inc. (the "Lender"), which upon infromation and belief, was an affiliate of the seller (the "LSTAR Loan"). Absent default, the maturity date of the LSTAR Loan was February 6, 2025. At the time of the purchase, the Property was fully leased to Comcast of New Jersey II LLC (the "Comcast Lease"). The rent generated from the Comcast Lease was sufficient to meet the debt service payments required under the LSTAR Loan. The Comcast Lease expired in or about June 2023 and Comcast elected not to renew.

**II.   EVENTS LEADING TO THE CHAPTER 11 CASE**

12.     As set forth above, Comcast Lease expired in or about June 2023 and the Property has been vacant since then. As a result, the Debtor defaulted on the LSTAR Loan which had been assigned to Wilmington Trust, as a trustee of the REMIC trust.

13. In or about March 2023, Wells Fargo, as master servicer, under the LSTAR Loan, called a default based upon the Debtor's failure to pay the March 2023 loan payment. The default letter also advised the Debtor the Default Rate was now in effect thereby almost doubling the monthly loan payment. By letter dated May 19, 2023, Wilmington Trust advised the Debtor based upon prior and continuing defaults, the LSTAR Loan was accelerated. Thereafter, in or about July 2023, Wilmington Trust commenced a mortgage foreclosure action in New Jersey state court. After some litigation, the New Jersey state court granted a judgment of foreclosure.

14. On June 11, 2024, the Debtor filed a voluntary Chapter 11 petition with the Clerk of this Court (the "Prior Chapter 11 Case"). The Prior Chapter 11 Case was assigned case no. 24-42466 (ESS). By order dated November 13, 2024, the Debtor's Prior Chapter 11 Case was dismissed.

15. The Foreclosure Sale has now been scheduled for March 5, 2025.

16. Although the Debtor's Prior Chapter 11 Case was not successful and dismissed, there are now materially changed circumstances as the Debtor recently executed an interim rental agreement with a division of the State of New Jersey to lease 56,870 ft of space at the Property for use by the New Jersey Department of Law & Public Safety and Department of Child Protection and Permanency for a period of two years at an annual rental of $1,407,000.00. In addition, the Debtor is in negotiation to lease an additional 34,000 ft space at the Property to a different tenant.

17. In order to attempt to preserve the Property and the avoidance of substantial loss of investment and potential adverse tax consequences to the Debtor's members, the Debtor has elected to file this second Chapter 11 case and attempt to reach an agreement with the Lender or confirm a plan over the Lender's objection.

18. The Debtor intends to file a plan of reorganization and a disclosure statement shortly after the Chapter 11 filing as well as a motion to schedule a hearing on shortened notice

to consider approval of the disclosure statement and to schedule a confirmation hearing on the plan.

### III.  PRE-PETITION CAPITAL STRUCTURE AND INDEBTEDNESS

19. As noted, the Debtor is a privately held limited liability company. As of the Petition Date, the Lender is owed in excess of $14 million inclusive of default interest and related fees on account of the LSTAR Loan.

20. Aside from the loan obligations to the Lender, the Debtor has an unsecured debt of approximately $1 million exclusive of the Lender's deficiency claim. In addition to the foregoing, the Debtor is likely obligated to a tenant which leases space on the roof of the Property for use and installation of solar panels.

### IV.  INFORMATION REQUIRED BY LOCAL BANKRUPTCY RULE 1007-4

21. I have been advised that Local Bankruptcy Rule 1007-4 requires certain information related to the Debtor which is set forth below.

22. In accordance with Local Bankruptcy Rule 1007-4(a)(v), there has been no prepetition committee of creditors formed in this Chapter 11 case.

23. In accordance with Local Bankruptcy Rule 1007-4(a)(vi), **Exhibit A** hereto is a list containing the names, addresses, and, where available, telephone and facsimile numbers of creditors holding the twenty (20) largest unsecured claims (excluding insiders) against the Debtor.

24. In accordance with Local Bankruptcy Rule 1007-4(a)(vii), **Exhibit B** hereto is a list containing the names, addresses, and, where available, telephone and facsimile numbers of the creditors holding the five (5) largest secured claims against the Debtor.

25. In accordance with Local Bankruptcy Rule 1007-4(a)(viii), **Exhibit C** hereto is a list containing a summary of the Debtor's assets and liabilities.

26. To the best of my knowledge, none of the Debtor's property is in the possession or control of any custodian, public officer, mortgagee, pledgee, assignee of rents, or secured creditor, or agent for any such entity.

27. In accordance with Local Bankruptcy Rule 1007-4(a)(xii), **Exhibit D** hereto is a list providing the location of the Debtor's substantial assets, the location of its books and records, and the value of any assets held by the Debtor outside the territorial limits of the United States.

28. In accordance with Local Bankruptcy Rule 1007-4(a)(xiii), **Exhibit E** hereto is a list of litigation commenced against the Debtor.

29. In accordance with Local Bankruptcy Rule 1007-4(a)(xiv), **Exhibit F** hereto is a list containing the names of the individuals who comprise the Debtor's existing senior management, with its tenure with the Debtor, and a brief summary of its relevant responsibilities and experience. The Debtor intends to continue to operate and debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

30. In accordance with Local Bankruptcy Rule 1007-4(a)(xv), the Debtor does not anticipate any payroll to any employees of the Debtor for the 30-day period following the commencement of the Debtor's Chapter 11 case.

31. In accordance with Local Bankruptcy Rule 1007-4(a)(xvi), the Debtor does not anticipate any payroll to the Debtor's officers, directors, and stockholders for services for the 30-day period following the commencement of the Debtor's Chapter 11 case.

32. In accordance with Local Bankruptcy Rule 1007-4(a)(xvii), the Debtor does not anticipate generating any cash or making any disbursements for the 30-day period following the commencement of the Debtor's Chapter 11 case.

Under 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 25th day of February 2025

/s/ David Goldwasser<br>
David Goldwasser